FILED
2014 Sep-19  PM 04:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| CHERYL VANITA HOBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:13-cv-00187-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.    Introduction

The plaintiff, Cheryl Vanita Hobson, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI").  Ms. Hobson timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Hobson was forty-one years old at the time of the hearing, she has a ninth-grade education, and she is able to communicate in English. (Tr. at 31, 44). She has no past relevant work experience. (*Id.*)  Ms. Hobson claims that she

became disabled on June 1, 2009, due to COPD, seizures, glaucoma, depression, back pain, and slow blood flow to the brain.  (Tr. at 155).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id.*  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id.*  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without

further consideration.  *Id*.  If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments.  20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id*.  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id*. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id*.  The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove his or her inability to perform those jobs in order to be found disabled.   *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying this sequential evaluation process, the ALJ determined that Ms. Hobson has not engaged in substantial gainful activity since July 15, 2009, the application date. (Tr. at 24).  According to the ALJ, Plaintiff's impairments include mild degenerative disc disease of the lumbar spine; seizure disorder; affective disorder with anxiety; bipolar disorder; COPD secondary to chronic tobacco abuse; and narcotic dependence, which were considered "severe" based on the requirements set forth in the regulations.  (*Id*.)  He also determined that the Plaintiff has impairments that are non-severe, which are: a previous hysterectomy following evidence of early stage uterine cancer, GERD, migraine headaches, tremor, glaucoma, and obesity.  (*Id*.)  However, he found that the impairments, either individually or in combination, do not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 25).

The ALJ did not find Ms. Hobson's allegations to be totally credible, and he determined that she has the residual functional capacity to perform "sedentary work as defined in 20 CFR 416.967(a), except she must avoid concentrated exposure to extreme heat, cold and pulmonary irritants; no driving commercial vehicles; occasional stooping; no climbing ladders, ropes or scaffolds; understand, remember and carry-out instructions sufficient to perform simple, routine, repetitive tasks; can maintain concentration, persistence and pace for periods up to

two hours sufficient to complete a regular workday with routine breaks; low stress environment, defined as infrequent, gradually introduced changes in the work setting; infrequent interaction with public; can be around employees throughout the workday, but only occasional, casual conversation and interpersonal interaction; only occasional, tactful, non-confrontational supervision; and deal with things rather than people. (Tr. at 27-28).

According to the ALJ, Ms. Hobson has no prior relevant work, she is a "younger individual," and she has a "limited education," as those terms are defined by the regulations. (Tr. at 31). He determined that "[t]ransferability of job skills is not an issue because the claimant does not have past relevant work." (*Id.*) The ALJ found that Ms. Hobson has the residual functional capacity to perform a significant range of sedentary work. (Tr. at 32). Even though Plaintiff cannot perform the full range of sedentary work, the ALJ relied upon the testimony of an impartial vocational expert ("VE") for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as inspector of small parts, bonder in the semi-conductor industry, and document preparer. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since July 15, 2009, the date the application was filed (20 CFR 416.920(g)." (*Id.*)

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.  No decision

is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.   Discussion

Ms. Hobson alleges that the ALJ's decision should be reversed and remanded for two reasons.  First, the Plaintiff argues that the ALJ's determination of her RFC is not supported by substantial evidence because the ALJ failed to include as a limitation upon her ability to do sedentary work that she be limited to working in a "well-spaced environment."  Second, the Plaintiff argues that the ALJ's determination that she has the ability to perform unskilled sedentary work is not supported by substantial evidence because the ALJ did not take into account that the Plaintiff's impairments will result in more than one absence per month from her job, which according to the VE, would make her unemployable.

### A.   Well-Spaced Work Environment

At the oral hearing, the ALJ discussed, in his hypothetical questions to the Vocational Expert (VE), Ms. Hobson's possible need for a well-spaced work environment for light work.

Q    Then I will ask you to consider the following.  Let's assume a younger individual with limited education but literate.  Let us further assume that this individual could perform work at the *light exertional level* but should avoid the following, . . . .

> This [hypothetical] person should deal with things rather than people; could be around employees throughout the day, but only occasional, casual conversations and interpersonal interaction, and *would benefit from a well-spaced work environment* with only occasional tactful and non-confrontational supervision. Given that particular hypothetical for both the exertional, the environmental, the postural limitations and the mental aspects, would there be other work existing in the national economy such an individual could perform?

> A    Judge, when you say could benefit from a well-spaced work environment, are you saying that she should have a well-spaced work environment?

> Q    Well-spaced work environment would be proper, yes, sir.

> A    Judge, unskilled, light or sedentary work is not going to offer a well-spaced work environment that I'm familiar with in Alabama.

> Q    Now if we were to take a look, then, *at just sedentary work* without the issue of a well-spaced work environment . . . would there be other work?

> A    There would be, Judge. Examples would include working as an inspector of small parts. . . . Such a person could function as a bonder in the semiconductor industry. . . . Such a person could function as a document preparer in the [INAUDIBLE] industry, preparing documents for microfilming or for scanning into a computer.

(Tr. at 75-77) (emphasis added).

The Plaintiff argues that the ALJ should have applied the well-spaced environment parameter set forth in his first hypothetical to Ms. Hobson's RFC

determination.  Had the ALJ done so, a finding that she is disabled arguably would have been required due to absence of any jobs that could meet that accommodation. The Plaintiff argues also that the ALJ should have analyzed her need for a well-spaced environment similarly to the court in *Rosario v. Commissioner of Social Security*, 2011 WL 6024027 (M.D. Fla. Dec. 5, 2011), in which the ALJ determined that the plaintiff's impairments created a situation in which "third parties walking in and out of her area" would cause distractions and that the plaintiff's "work environment would consist of a desk, cubicle or space, but not like a fast food environment."  *Id.* at *3.  Ms. Hobson argues that the ALJ in *Rosario* properly considered the plaintiff's need for limited distractions, and that the ALJ in the instant case similarly should have considered Ms. Hobson's need for limited distractions.

The ALJ addressed the Plaintiff's claim of an inability to concentrate in his decision.  He wrote, for example:

> With regard to concentration, persistence or pace, the claimant has mild to moderate difficulties.  Her niece indicated in the Function Report that the claimant can do several activities that require a certain concentration, persistence or pace such as dealing with her children, watching television, watching her son play football, playing computer games and talking on the phone.
>
> . . .

In addition, Dr. Houston stated that the claimant was able to "concentrate and was persistent" and can adapt well to changing conditions; however, the undersigned found the claimant to be more limited in these areas and addressed these in the above residual functional capacity assessment.   The undersigned found that the claimant can maintain concentration, persistence and pace for periods up to 2 hours sufficient to complete a regular workday with routine breaks. . .

Great weight is given to the records of the claimant's treating physicians, Dr. Boswell, Dr. Miller and Dr. Twilley.   They have examined the claimant and have established a patient-physician [relationship] [sic] with the claimant.   They are familiar with her limitations and abilities.   None of them have given the claimant any limitations or stated that she is unable to work due to her impairments.

. . .

Additionally, there is evidence of exaggeration. . . . She [] alleged she can only concentrate for 15 minutes at a time; however, her Function Reports show she is able to watch television all day, maintain an checking/savings account and watch her son play football, without any problems, all of which are activities that require longer than 15 minutes of concentration.   In addition, all of this is inconsistent with the findings of Dr. Houston in these areas (his findings are above).

(Tr. at 30-31).  Along with claiming she has difficulty concentrating, the Plaintiff testified in the oral hearing that she had difficulty getting along with co-workers at her previous jobs.  She did not, however, claim that co-workers or customers being in her workspace was particularly distracting.  Her testimony did not indicate that a "cubicle" style working environment would improve her ability to concentrate.

Ultimately, the Plaintiff is responsible for proving disability. Although the burden is on the Commissioner to demonstrate that jobs exist which the claimant can perform, once that burden is met, the plaintiff must prove her inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). Beyond claiming that the ALJ "ignored" the possibility that Ms. Hobson would be unable to work with the distraction of third parties walking around in her workspace, the Plaintiff does not offer any evidence that Ms. Hobson cannot do the jobs listed in the ALJ's opinion or that the ALJ's RFC determination was not based on substantial evidence. The Plaintiff's medical records do not indicate that her treating physicians believed she was unable to work around people or that she needed to be in a "well-spaced" environment in order to work or function. The only evidence of the Plaintiff's need for a well-spaced environment is her own testimony, which the ALJ found only partially credible. As discussed, *infra*, the ALJ adequately explained his reasoning for not finding Ms. Hobson's testimony fully credible.

The Court must always be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are . . . reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the

determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The ALJ clearly explained his determination and supported it with substantial evidence from the medical and non-medical records in the instant case. Accordingly, the ALJ's determination is due to be upheld.

## B. Absences

The Plaintiff argues that her "impairments in combination would certainly result in more than just one absence from work per month." (Doc. 12, p. 12). The VE testified that the employer of a person with Ms. Hobson's education and work history would not tolerate more than one absence from work per month. Based on the Plaintiff's impairments and the VE's testimony, the Plaintiff argues that the ALJ should have found Ms. Hobson disabled and his decision is "not supported by substantial evidence and is due to be reversed." (*Id.*)

The ALJ discussed possible absenteeism with the VE at the oral hearing.

Q   And in this case, if I were to conclude that such an individual similarly situated to the claimant in this case were to  - - could be expected to miss two or more days per month due to chronic, recurrent symptomatology, in this case, chronic pain, also the effects of ongoing seizures and other symptomatology, the need for medical intervention, in your opinion, what would that - - what would be the vocational significance of such absenteeism?

A   It would preclude gainful activity.

Q       All right.  And if I were to find [] the claimant's testimony to be credible with respect to the intensity, the frequency and severity of her symptomatology, here again, more importantly, chronic pain syndrome and ongoing seizure activity along with the effects of migraines, indicating that she suffers one to two per week, if I found that all to be credible and supported by the objective medical evidence of record, what vocational significance, in your opinion, would that have?

A       It would preclude gainful activity.

(Tr. at 78-79).  Again, the Plaintiff argues that the parameters of the hypothetical precluding gainful activity should have been used by the ALJ to determine the Plaintiff's vocational ability.   The Plaintiff states that her "impairments in combination would certainly result in more than just one absence from work per month.  She has bipolar disorder or affective disorder with mixed anxiety, a seizure disorder, history of migraine headaches, and degenerative joint disease of the lumbar spine. . . . It is also undisputed that the claimant has kidney stones every three months which cause her to miss a day or two whenever they happen."  (Doc. 12, p. 12).

The Plaintiff's argument that her impairments "certainly" would result in more than one absence from work per month is based solely on Ms. Hobson's own subjective allegations of the severity of her impairments.   Part of the ALJ's responsibility was to assess whether such subjective allegations are credible and

supported by objective medical evidence. In the instant case, the ALJ found that Ms. Hobson's testimony was not completely credible and was not supported by evidence in the medical and nonmedical record.

> . . .[O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

> . . .

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

> The claimant complains of chronic back pain all the time with a dull pain in her legs. She rated her pain at a pain level 6, on a 1 – 10 scale. She alleges that her pain is exacerbated by prolonged sitting and walking. She does not walk with an assistive device. An MRI of the lumbar spine done in 2006 showed no disc herniation, no disc protrusion, no evidence of mechanical nerve root deformity or neural forminal stenosis. She did have mild degenerative disc changes and facet hypertrophy at L5-S1. She has been treated at the emergency room for lower back pain; however, on her emergency room sign in sheet she put that she was there because she was out of her pain medication. An electrodiagnostic report performed on July 6, 2010

showed positive findings suggesting lumbosacral plexopathy and lumbar radiculopa[t]hy [sic].   The claimant has been treated consistently for back pain.   She has been prescribed a variety of medications to relieve the pain and reported success with the medication.   At her various follow-up visits, she reported relief from back pain, and, as recently as at her August 5, 2010 follow-up, she reported reduced back pain.   In addition, there is no recommendation for surgery on her back (Exhibits 4F, 6F, 13F, 16F, 18F and 24F).

The claimant also has seizures.   When the claimant first had seizures she was prescribed Keppra but had to discontinue it, because it caused her to have hallucinations and curse.   She discontinued the medication and the hallucinations and cur[s]ing [sic] stopped.   The claimant was then prescribed Depakote for her seizures, which was successful in controlling her seizures.   Her treating physician discontinued her Depakote in October 2008 and she began having seizures.   She was then prescribed Lamictal, by her neurologist, Lorn S. Miller, D.C., M.D., which has since successfully controlled her seizures.   However, she experienced a seizure in March 2010 and June 2010 because [] [sic] the claimant ran out of her medication and, therefore, was not taking it.   At the hearing, the claimant testified that she currently has 3-4 seizures a month, because she is still not taking her medication. . . . As long as the claimant is taking her seizure medication, her seizures are controlled (Exhibits 4E, 4F, 5F, 14F and 15F).

The claimant also has COPD secondary to chronic tobacco use. . . . At the hearing, she testified that she still smokes 5-6 cigarettes daily. Although she is still smoking, the claimant stated at her January 18, 2011 office visit that she was getting some relief from the COPD (Exhibits 2F, 6F, 13F and 22F 24F).

. . .

The claimant has bipolar disorder and anxiety.   The claimant reported being seen at a mental health center wherein she was diagnosed with bipolar disorder.   The claimant does have insurance so she could have mental health treatment, but there is no evidence that she has formal mental health treatment from anyone other than her regular treating

physician, Dr. Boswell.  He has prescribed her Seroquel and Xanex [sic], which she testified makes her feel groggy, although there is no evidence she reported this side effect.  The claimant was evaluated by Charles E. Houston, Sr., Ph.D., an evaluating psychologist.  Dr. Houston diagnosed her with bipolar disorder, possibly mixed type. . . . Although he states that "her ability to relate to other[s] [sic] is affected" the Function Reports indicate that she spends time with family daily, i.e., daily going to her niece[']s [sic] house; talks to people daily; has a boyfriend and takes care of her children.  There is no evidence in the Function Reports that she has problems with others, other than "sometimes."

. . .

Great weight is given to the records of the claimant's treating physicians, Dr. Boswell, Dr. Miller and Dr. Twilley.  They have examined the claimant and have established a patient-physician [relationship] [sic] with the claimant.  They are familiar with her limitations and abilities.  None of them have given the claimant any limitations or stated that she is unable to work due to her impairments.

. . .

At the hearing she stated that she does not like to leave the house and cannot be around people (co-workers and family) because she cannot get along with people; however, in both Function Reports (one from the claimant[] [sic] and one from the claimant's niece) it is indicated that she goes to her niece's house daily and spends time with her; has a boyfriend; talks on the phone; goes to stores; lives with her 3 children, and watches her son play football.  She also testified that she needs help with cooking and cleaning, but the Function Reports indicate otherwise, in that, both her [sic] and her niece indicate that the claimant cleans, does the laundry, cares for her pet and cooks full course meals daily.  In fact, her niece stated that the claimant cleans house a half day each day.  There is no indication that she requires help, other than the occasional help from her children.

Additionally, there is evidence of exaggeration.  At the hearing [s]he [sic] testified that [she] [sic] needs help getting out of the bed in the mornings; however, this has not been reported to any physician and none of her Function Reports indicate[s] [sic] this.  She testified that she drives and goes to the grocery store maybe 2 times [per-month], but her Function Reports show she goes shopping for food and clothes more frequently than 2 times.  She alleged that she cannot even perform a sit down/sedentary job and she cannot do a whole lot of lifting, carrying and sitting for long periods of time.  However, her Function Reports show that she [is] able [to] [sic] cook full course meals, clean, dust, sweep, maintain her personal care, all with very little help, if any.  She also alleged she can only concentrate for 15 minutes at a time; however, her Function Reports show she is able to watch television all day, maintain an checking/savings account and watch her son play football, without any problems, all of which are activities that require longer than 15 minutes of concentration.  In addition, all of this is inconsistent with the findings of Dr. Houston in these areas. . .

After thorough review of the evidence of record, including the claimant's allegations and testimony, forms completed by the claimant at the request of Social Security, the objective medical findings, medical opinions, and other relevant evidence, the undersigned finds the claimant capable of performing work consistent with the residual functional capacity established in this decision.

(Tr. at 27-31).  The ALJ found that the Plaintiff's migraines "are controlled with medication," "have not increased in severity since June 2009," and that none of Ms. Hobson's treating physicians "have stated that the claimant has any limitations or disability due to [her migraines]."  (Tr. at 24).  Based on this evidence, the ALJ determined that the Plaintiff's migraines "constitute, at most,

only slight abnormalities that cannot reasonably be expected to produce more than minimal, if any, work-related limitations." (*Id.*)

The ALJ did not, however, address the Plaintiff's history of kidney stones in his determination. The Plaintiff did not list her kidney stones as an ailment in her Disability Report. (Tr. at 155, 190). Ms. Hobson's medical records reflect a history of kidney stones, and the ALJ acknowledged her kidney stones in the oral hearing.

Q  Okay. And then you're having kidney stones?

A  Yes, sir.

Q  And you're seeing Dr. Brian Stone about that?

A  Yes, sir.

Q  How often do you have kidney stones?

A  Like every three months. I've had lithotripsies done, too.

Q  Okay. Does that take - - if you have a kidney stone, does that take you out for a day or two?

A  Yes, sir.

Q  So you're missing a day or two every three months?

A  Yes, sir.

(Tr. at 59-60).

Although the ALJ did not specifically address the Plaintiff's history of kidney stones in his opinion, the Eleventh Circuit has held, "[t]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision. . . . is not a broad rejection which is 'not enough to enable [the court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer*, 395 F.3d at 1211 (quoting *Foote v. Charter*, 67 F.3d 1553, 1561(11th Cir. 1995)).  It is clear to the court that the ALJ thoughtfully and thoroughly reviewed the record in the instant case and considered medical evidence along with non-medical evidence such as the Plaintiff's testimony.  The ALJ's decision was not a broad-brush rejection and is due to be upheld.

However, even assuming that the ALJ erred in failing to specifically address the Plaintiff's history of kidney stones, such error was harmless.  In *Jordan v. Astrue*, the United States District Court for the Middle District of Florida discusses the idea of "harmless error" in regard to ALJ determinations:

> In *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989), the court found no principle of administrative law or common sense requires remand in quest of a perfect opinion unless there is reason to believe the remand might lead to a different result. In *Ward v. Commissioner of Social Security,* 211 F.3d 652, 656 (1st Cir.2000), the court held that

> while an error of law by the ALJ may necessitate a remand, a remand is
> not essential if it will amount to no more than an empty exercise.

617 F. Supp. 2d 1154, 1164 (M.D. Fla. 2008).

In the instant case, the Plaintiff has presented no evidence that she is disabled specifically due to her history with kidney stones.  In the Plaintiff's brief she argues that it is "undisputed" that her condition will cause her to accrue more than an average of one absence from work per-month, making her unable to do any work the ALJ found her qualified for.  However, the Plaintiff's bald assertion that she will have a kidney stone every three months and miss two-to-three days of work each time does not indicate that the ALJ's decision is not supported by substantial evidence.  The medical records simply do not support the Furthermore, the Plaintiff's medical records, though they do indicate a history of kidney stones, do not indicate that the plaintiff is fated to always suffer from kidney stones.  Even if the ALJ did err in failing to specifically discuss the Plaintiff's history of kidney stones in his determination, remanding the case for further analysis on that point would not change the outcome of the case and would be an exercise in futility. Accordingly, the ALJ's determination is due to be affirmed.

**IV.    Conclusion**

Upon review of the administrative record, and considering all of Ms. Hobson's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered affirming the Commissioner's determination.

DONE this 19th day of September, 2014.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE